IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

MAY 1 6 1997

MICHAEL N. ⟶⟶⟶, Clerk

| | | |
|---|---|---|
| MESERET BERHEA, *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-96-1093 |
| | § | |
| JANET RENO, *et al.*, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

On November 27, 1996, this court denied defendants' motion to dismiss this suit as moot. This court found that although defendants had adopted a new policy addressing the immigration rules plaintiffs challenged in this case, defendants had failed to provide a mechanism to notify the affected persons of the change in the policy and of their right to reapply for admission to this country. (Docket Entry No. 70). On December 26, 1996, defendants renewed their motion to dismiss based on a supplemented record. Defendants have provided additional steps to notify potential class members of the policy change. (Docket Entry No. 73, Attachment 1). Plaintiffs oppose the renewed motion to dismiss, asserting that defendants' notification procedures remain insufficient and that defendants have failed to adopt a final order. Plaintiffs have also supplemented the record to argue that collateral consequences of the former policies remain that preclude dismissal on the ground of mootness. (Docket Entry Nos. 79 and 87).

94

CMPDF - www.fastio.com

Based on the record as supplemented, and the applicable law, this court concludes that the claims raised in plaintiffs' First Amended Complaint, and the basis on which plaintiffs seek class certification, are moot. This court therefore DENIES the motion for class certification and GRANTS the motion to dismiss the First Amended Complaint. However, this court also concludes that plaintiffs have raised a collateral consequence from the former, abandoned policy. The collateral consequence is the ineligibility to follow to join under the new policy of children conceived after the refugee was admitted to the United States, in a marriage entered into between the refugee's INS interview and admission to this country. This court gives plaintiffs leave to file a Second Amended Complaint, asserting the claims arising from the collateral consequence, within thirty days from the date this order is entered.

This court addresses the parties' arguments below.

## I.    The Agency's New Policy

The facts and prior proceedings in this case are set out in this court's November 26, 1996 Memorandum and Opinion. (Docket Entry No. 70). This case arises from INS policies implementing the Immigration and Nationality Act provisions governing the unification of refugee immigrants with their families. Section 207(c)(1) of the Act, 8 U.S.C. § 1157(c)(2), allows the admission into this

CibPDF - www.fastio.com

country of a spouse and/or child of a person who qualifies for refugee status.[1] Under this statute, spouses and children of persons who qualify for admission as refugees under section 207(c)(1) shall be granted the same admission status as the "principal" refugee, if they are accompanying or following to join the principal refugee. The principal refugee must file an I-730 refugee relative petition on behalf of his or her spouse and children to enable them to achieve "derivative" refugee status.

At the time this lawsuit was filed, the INS policy was to approve an I-730 petition to accompany or follow to join only if the spousal or parent/child relationship existed when the INS interviewed the refugee in connection with his or her application for refugee status. The INS applied this policy to preclude children from accompanying or following to join their principal refugee parent if the child was born or conceived after the principal refugee applicant had his interview for refugee status but before the refugee entered the United States. The INS also precluded spouses from accompanying or following to join their refugee husband or wife if the

---

[1]   The statute provides as follows:

A spouse or child (as defined in section 1101(b)(1)(A), (B), (C), (D), or (E) of this title) of any refugee who qualifies for admission under paragraph (1), shall, if not otherwise entitled to admission under paragraph (1) and if not a person described in the second sentence of section 1101(a)(42) of this title, be entitled to the same admission status as such refugee if accompanying, or following to join, such refugee and if the spouse or child is admissible (except as otherwise provided under paragraph (3)) as an immigrant under this chapter. Upon the spouse's or child's admission to the United States, such admission shall be charged against the numerical limitation established in accordance with the appropriate subsection under which the refugee's admission is charged.

3

marriage took place after the applicant was interviewed but before the refugee entered the United States. The INS also precluded spouses and children from following to join a refugee admitted as a member of a family group rather than as a designated "principal applicant." Under section 207(c)(1), the INS allowed only a "principal" applicant the right to have spouses and children follow to join under section 207(c)(2).

Plaintiffs filed this class action suit in April 1996, alleging that these INS restrictions to section 1157(c)(2) are arbitrary and illegal. Plaintiffs sought no damages, but rather injunctive and declaratory relief. Plaintiffs sought to certify the following two classes of plaintiffs:

- all refugees who have or will qualify for admission to the United States, their spouses, and their children, all of whom have or will be denied under 8 U.S.C. § 1157(c)(2) because the marriage between the refugee and the spouse, or the birth or conception of the refugee's child took place after the refugee's interview for refugee status but prior to the refugee's entry to the United States

- all refugees who have or will qualify for admission to the United States under 8 U.S.C. § 1157(c)(1), their spouse and their children, all of whom have or will be denied the right to reunite under 8 U.S.C. § 1157(c)(2) because the refugee is not considered by Defendants to be the "principal" applicant or the "principal" alien in his or her refugee case.

(Docket Entry No. 12, pp. 1-2).

4

Plaintiffs sought the following relief:

- a declaration that the policy and practice of denying plaintiffs and class members the right to reunite in the United States under section 1157(c)(2) solely because the relationship was formed after the refugee's interview, although the marriage, birth, or conception was prior to the refugee's admission to the United States, violated the Act and implementing regulations and the Equal Protection Clause of the Fifth Amendment, as well as the Administrative Procedures Act, 5 U.S.C. § § 552 and 553;

- an injunction against denying plaintiffs and class members the right to reunite under section 1157(c)(2) solely because the relationship occurred after the refugee's interview so long as the marriage, birth, or conception occurred prior to the refugee's entry into the United States;

- a declaration that the defendants' policy and practice of denying plaintiffs the right to reunite under 8 U.S.C. § 1157(c)(2) when defendants identify the refugee as a non-"principal" alien or non-"principal" applicant to be a violation of the Act and implementing regulations, the Equal Protection Clause of the Fifth Amendment, and the Administrative Procedure Act;

- an injunction against denying plaintiffs and class members the right to reunite under section 1157(c)(2) solely because the refugee is considered by defendants to be the non-"principal" alien, or non-"principal" applicant.

Plaintiffs also sought an order requiring defendants "expeditiously" to readjudicate and approve otherwise approvable I-730 refugee relative petitions: (1)

for spouses of refugees whose petitions were denied or revoked because the marriage occurred after the refugee's interview but before the refugee entered the United States; (2) for children of refugees whose petitions were denied or revoked because the child was born after the refugee's interview so long as the child was either born or in utero at the time of the refugee's entry to the United States; (3) for spouses and children of refugees found to be qualified for admission under section 1157(c)(1) but considered by defendants to be the non-"principal" alien or applicant. Plaintiffs sought the implementation of an interim policy and practice consistent with the relief until final regulations were promulgated. Finally, plaintiffs sought attorneys' fees and costs. (Docket Entry No. 11, pp. 2, 33-34).

The August 27, 1996 Policy Memorandum directed INS Service Center Directors to allow children and spouses of persons found to be refugees under section 207(c)(1) to accompany or follow to join the refugee, so long as the familial relationship began before the refugee was granted admission into the United States. The Policy Memorandum directed INS offices to apply this new standard to "petitions currently pending, new filings, and filings by petitioners who may have previously filed and been denied." The Policy Memorandum also provided that all individuals admitted to the United States under section 207(c)(1) would be treated as a "principal" refugee for the purpose of filing I-730 forms for their spouses or children. (Docket Entry No. 50, Exh. 1).

The INS published proposed permanent rules for notice and comment in the Federal Register on July 9, 1996[2]; the comment period expired on September 9, 1996. (Docket Entry No. 43, p. 2). The INS moved to dismiss this suit as moot based on the policy changes announced in the Policy Memorandum and the forthcoming final regulations. This court denied the motion, based on the absence of any mechanism for notifying those affected by the prior policies about the changes in the eligibility criteria for spouses and children of refugees granted admission, and the opportunity to reapply. Defendants have supplemented the record to include the measures taken to notify potential class members of the new policies (Docket Entry Nos. 50, 73, and 76), and renew their motion to have this case dismissed as moot.

## II. Mootness and Amended Policies

The United States Supreme Court has summarized the issue now before this court:

> "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." We recognize that, as a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." But jurisdiction, properly acquired, may abate if the case becomes moot because
>
> (1) it can be said with assurance that "there is no reasonable expectation . . ." that the alleged violation will recur, and

---

2       The proposed regulations were published at 61 Fed. Reg. 35,984-35,987.

7

> (2) interim relief or events have completely and irrevocably
> eradicated the effects of the alleged violation.

*County of L.A. v. Davis*, 99 S. Ct. 1379, 1383 (1979)(internal quotations and citations omitted). In their responses to defendants' renewed motion to dismiss, plaintiffs do not argue that the defendants are likely to resume the policies challenged in this case. (Docket Entry Nos. 79 and 87). Instead, plaintiffs argue that the relief afforded by the new policies is incomplete because defendants still do not provide notice of the changes to all those harmed by the prior policies or allow sufficient time for newly eligible family members to apply. (Docket Entry No. 79, p. 2 and No. 87, p. 2).

Plaintiffs also introduce a new basis for denying mootness. Plaintiffs cite two cases in which refugees' wives were denied admission under the former follow to join policy because the marriages occurred after the refugees' interview with INS but before the refugee was admitted to the United States. The refugees came to this country; their spouses remained in the country of origin, due to the former policy. Since then, the wives have conceived and borne children who, but for the former policies, would have been born in the United States. Under the new policies, the INS would grant the I-730 applications filed on behalf of the spouses because the marriages took place before the petitioners' admission into the United States as refugees. However, the INS has rejected the I-730 application filed on behalf of one of the children, on the ground that she was conceived after her refugee father entered

8

the United States. Plaintiffs argue that the inability of such children, conceived after the father was admitted into the United States, but to a mother who may now be eligible for admission because the marriage occurred before the father's admission, is a "collateral consequence" of the former policies, which precludes mootness. (Docket Entry No. 87, pp. 3-9)

In cases involving a law that is amended during the pendency of a case, so as to remove its challenged features, the claim for injunctive relief may become moot as to those features. However, the entire case becomes moot only where a "superseding statute . . . .satisfies *all* the principles sought in an attack on the prior statute. . . .[A] superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." *Naturist Soc., Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992), *citing Kremens v. Bartley*, 97 S. Ct. 1709, 1718 (1977); *Lewis v. Continental Bank Corp.*, 110 S. Ct. 1249, 1254 (1990); *see also International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 815-16 (5th Cir. 1979). In such cases, a court can dismiss all or part of the plaintiffs' claims as moot due to the amendments to the challenged statute or policy, but retain those claims that remain viable due to the "collateral consequences" or

effects of the former policy. *Naturist Soc., Inc. v. Fillyaw*, 958 F.2d at 1520; 13A Wright & Miller, FED. PRAC. & PROCEDURE § 3533.3.

A determination of mootness is ordinarily a jurisdictional issue. Under Article III, federal court jurisdiction depends on the existence of a case or controversy that make a case justiciable. *North Carolina v. Rice*, 92 S. Ct. 402, 404 (1971); *Flast v. Cohen*, 88 S. Ct. 1942, 1949-50 (1968). However, as one court has noted, "in cases involving the amendment or repeal of a statute or ordinance, mootness is a 'matter relating to the exercise rather than the existence of judicial power.'" *Coral Const. Co. v. King County*, 941 F.2d 910, 927 (9th Cir. 1991), *cert. denied*, 112 S. Ct. 875 (1992) (citations omitted). Whether the issue is jurisdiction or its proper exercise, the burden is on the defendants to show that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 99 S. Ct. 1379, 1383 (1979), *citing DeFunis v. Odegaard*, 416 U.S. 312 (1974).

## III. The Notification Procedures

In the renewed motion to dismiss, defendants defined the steps they have taken to notify those affected of the policy change and the opportunity to apply on behalf of spouses and children:

> The Texas and Nebraska INS Service Centers, which since May 1993 have received, reviewed, and adjudicated all I-730 petitions, will send to all persons who have filed I-730 petitions and have been denied following-to-join

CutPDF - www.fastio.com

benefits a letter describing the new policies and the opportunity for refiling;

To reach those who applied unsuccessfully before May 1993, the INS provided a copy of the Policy Memorandum to the American Immigration Lawyers Association for publication in its monthly publication, and had the Policy Memorandum published in the October 21, 1996 edition of Interpreter Releases, a weekly report and analysis of immigration and nationality law.

(Docket Entry No. 73, Declaration of Michael Aytes, INS Assistant Commissioner for Benefits).   In their response to defendants' renewed motion to dismiss, plaintiffs contended that the proposed notification steps were insufficient because they were unlikely to reach the following potential class members:

- refugees who were deterred from ever filing I-730s and are unlikely to receive advice from an immigration attorney;

- refugees who filed before May 1993;

- refugees who never entered the United States; and

- refugees who filed after May 1993 but have moved to a new address.

(Docket Entry No. 79, pp. 3-8).  Plaintiffs suggested that the INS be required to institute the following notification procedures:

- identify those refugees who filed before 1993 from the receipt ledger records and send them personal notice;

11

- provide notice to all refugee resettlement and advocacy agencies; and

- provide notice in English and Spanish magazines, and on Spanish radio, television, and cable stations.

(Docket Entry No. 79, p. 6).

Defendants responded by stating that the INS had sent notice of the policy change to all the INS Regional Directors, with instructions that it be forwarded to all district offices for posting; issued a news release to *PR Newswire*, an organization which distributes information to various media outlets, including foreign language newspapers, radio, and television stations; notified 35 offices of 15 refugee resettlement and assistance agencies in the United States and elsewhere; and had a cable sent by the Department of State Visa Office to all diplomatic and consular posts advising of the policy change. (Docket Entry No. 83, p. 2, n.3). Plaintiffs contend that these additional measures are still insufficient, asserting that all refugees who have been denied rights under the former policy should receive individual notice. (Docket Entry No. 85, p. 2).

Before May 1993, I-730 applications were received in all INS district offices, rather than centralized in the Texas and Nebraska offices. (Docket Entry No. 73, Exh. A, Declaration of Michael Aytes, Assistant Commissioner for Benefits of the INS). The INS has submitted competent, and unrebutted, proof that the agency does not have a consolidated ledger or computer index that would

permit the retrieval of I-730 applications filed and rejected before May 1993. (Docket Entry No. 83, Exhibit A, Declaration Ronald Whitney, Association General Counsel of the INS).

The difficulties in implementing individual notice to those who previously filed I-730 applications but were denied on the grounds at issue are compounded by the fact that, as plaintiffs' counsel acknowledge, refugees move frequently. It is at best speculative to assume that those refugees who unsuccessfully filed I-730 applications before May 1993 would still be at the addresses provided to the INS four years ago. (Docket Entry No. 79, p. 5).

The INS is able to generate a list of the names of refugees who filed I-730 applications that were denied after May 1993, when the INS centralized the processing of the I-730 applications in two offices. The INS will provide individual notice of the new policy to these refugees. As to other affected refugees, both those who filed unsuccessfully before May 1993, and those who were deterred from filing by the restrictions of the former policy, the INS proposes to use publication and dissemination of the new policy in and to offices, agencies, and media outlets likely to be in contact with such refugees. Specifically, defendants have distributed the new policy to INS district offices throughout the world; to Department of State offices; to a large number of refugee resettlement and advocacy agencies; to publications and radio stations likely to reach refugees;

CMPDF - www.fxsto.com

and to government offices and private agencies to whom refugees would turn for advice.

Notice must be reasonably calculated, under the circumstances, to apprise interested parties of the new policy. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 70 S. Ct. 652, 657 (1950); *see also, In re Eagle Bus Manufacturing Inc.*, 62 F.3d 730, 735 (5th Cir. 1995); *In re Fairchild Aircraft Corporation*, 184 B.R. 910, 928 (W.D. Tex. 1995). Publication notice will satisfy due process so long as it is "reasonably calculated, under the circumstances," to inform interested parties. *See Mullane*, 70 S. Ct. at 657; *see also In re Charter Co.*, 113 B.R. 725, 728 (M.D. Fla. 1990) ("the "proper inquiry in evaluating notice is whether a party acted reasonably in selecting means likely to inform persons affected, not whether each person actually received notice").

The adequacy of the notice provided to affected refugees in this case may be judged by the level of notice required in class actions for potential class members. In *Mullane v. Central Hanover Bank & Trust Co.*, the Supreme Court held that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 70 S. Ct. 652, 657 (1950). The Court held that while personal notice must be given to interested parties whose names and addresses are known, notice by publication is sufficient where it is not

14

"reasonably possible or practicable to give more adequate warning." *Id.* at 658-59. The Court explained that notice by publication is inadequate for known parties because it is not reasonably calculated to reach those who could easily be informed by other means at hand. *Id.* at 660.

This court finds that the combination of individual notice to refugees who unsuccessfully filed I-730 applications after May 1993, whose names and addresses are known, and notice by publication through refugee agencies and immigration entities to other refugees whose names and addresses are not known, and whose names and addresses cannot be reasonably obtained, complies with the requirements of due process. The proposed notice is likely to "spread the word" reliably and effectively to potential class members. (*See* Docket Entry No. 56, p. 8 (plaintiffs noted that word of the new policy will spread among refugees)). This court finds that the notification procedures are likely to inform those who were denied follow to join benefits under the former policies that those policies have changed and that they may seek application under the new eligibility criteria. This court finds that, with the exception noted below, such notification procedures are likely to eradicate the continuing effects of the challenged, abandoned policy.

## IV.   Lack of a Final Rule and the One-Year Provision

Plaintiffs contend that the lack of a final rule prevents a finding of mootness. (Docket Entry No. 86, pp. 11-12).   Interim regulations have been

adopted; the proposed final rules have been published; the comment period for the final regulations has passed without an apparent response. It is undisputed that defendants have notified the appropriate officials and all relevant offices of the new policy. The final regulations were to be approved by January 1997. (Docket Entry No. 11, p. 2). As of the date of this Memorandum and Order, however, no final regulations have been adopted.

The INS has submitted the affidavit of Michael Aytes, the Assistant Commissioner for the Benefits Division of the United States Immigration and Naturalization Service, explaining the reasons that promulgation of the final rule has been delayed. These reasons include the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which has required the benefits division to spend a significant amount of time and resources developing new policies and regulations to implement the statutory changes. (Docket Entry No. 93, Exh. A, p. 2). None of the reasons proffered permits an inference that the INS intends to restore its prior policy or cease efforts to make the new policy permanent. Aytes states that the benefits division intends to promulgate the final rule before the Policy Memorandum expires on August 27, 1997. (*Id.*). If the final rule is not promulgated by that date, the benefits division intends to "extend the policy directive so that it is effective until the Final Rule is published." (*Id.*).

The failure to adopt a final rule by the expected deadline is not evidence that defendants do not intend to comply with their representations to this court. Defendants submitted an affidavit from John Cummings, the Deputy Director of International Affairs for the INS, dated October 17, 1996, stating that the INS is "currently developing permanent procedures for the implementation" of the Policy Memorandum. (Docket Entry No. 64, Exh. 1). The affidavit of Michael Aytes confirms that this process is ongoing. This is consistent with this court's previous finding that the simultaneous presence of proposed final regulations that have already been issued, and pending implementation procedures, provide reasonable assurances that the INS does not intend to return to the former policies. *County of Los Angeles*, 99 S. Ct. at 1383; *see also, Community for Creative Non-Violence v. Hess*, 745 F.2d 697, 701 (D.C. Cir. 1984) (in determining whether to dismiss for mootness, a court should take into account the agency's good faith in remedying the alleged misconduct).

Plaintiffs assert that the proposed final rule will not allow unnotified refugees time to file a new I-730 petition because the rule requires refugees to file their I-730 petition within one year of their admission into the United States. (Docket Entry No. 87, p. 12). Plaintiffs contend that under the one-year cutoff provision, "the unnotified refugees whose I-730 Petitions were denied under the Challenged Policies

prior to May 1993, will automatically lose their statutorily mandated derivative rights

as of the date of publication." (*Id.*).

> The proposed version of the Final Rule provides as follows:
>
> The proposed regulation will impose a 1-year time limit
> from the date of the principal's admission, within which a
> refugee or asylee must file a separate Form I-730 for each
> individual qualifying family member, unless it is clearly
> established that compelling circumstances preclude the
> timely filing of the application. *Refugees or asylees who
> have resided in the United States for more than 1 year*
> when this regulations becomes effective *will be granted 1
> year from the effective date of the final regulation in which
> to file Form I-730* for following-to-join benefits for their
> spouse and unmarried, minor child(ren). The Service may,
> however, waive the 1-year limit when it is determined that
> humanitarian reasons for extending the filing period exists.

(Docket Entry No. 92, Exh. A) (emphasis added). The proposed version of the Final

Rule allows the affected refugees at least one year within which to learn of the new

policy and file a new I-730 petition. Plaintiffs' objection does not preclude a finding

of mootness.

## V.    The Newly Asserted Claims

Plaintiffs contend that mootness is precluded by the claims of two

"potential" class members. (Docket Entry No. 85, p. 3). Yevgeniy Mikhaylovich

Kogan ("Kogan") and Yevgeniy Mikhaylovich Toyber ("Toyber") were married

after their respective refugee interviews but before their admission into the United

States. (Docket Entry Nos. 79, Exh. 5 and 82). Under the former policy, their

wives were denied admission to the United States because the spousal relationships did not exist before the refugees' interview with the INS. Kogan and Toyber proceeded to the United States alone. (*Id.*). Both men were able to visit their wives in either their country of origin or in another country outside the United States. Both men have children conceived after the men were admitted into the United States. Both men assert that, had their wives been allowed to follow to join under the former policy, their children would have been born on American soil and would be American citizens. (Docket Entry No. 79, p. 7, n. 5). Instead, although the new policies may make their wives eligible to follow to join them in the United States, their children are not eligible because they were born after the refugee fathers were admitted into this country. The INS has rejected Toyber's I-730 application on behalf of his infant daughter on that basis. (Docket Entry No. 88). Defendants do not dispute that under the new policies, Toyber's wife is eligible to follow to join her refugee husband to the United States, but her infant daughter cannot be admitted.

The men's wives must choose either to remain with their children outside the United States and apart from their husbands or to abandon their children and join their husbands in the United States. The practical consequence is that the wives are unable to follow to join their spouses, even under the new policy. Plaintiffs contend that defendants' refusal to admit the Kogan and Toyber

19

children into the United States is a collateral consequence of the prior policy, that precludes a finding of mootness. (Docket Entry No. 87, p. 2).

The "collateral consequences" exception to mootness first arose in the context of the review of expired criminal sentences. In that application, a "prisoner's release from custody did not moot his habeas petition where he could suffer adverse collateral consequences, that is, disabilities or burdens which may flow from his conviction that give him a substantial stake in the judgment of conviction, one which survives the satisfaction of the imposed sentence. . . .the 'mere possibility of adverse collateral consequences is sufficient to preclude a finding of mootness.'" *Umanzor v. Lambert*, 782 F.2d 1299, 1301 (5th Cir. 1986), *quoting Carafas v. LaVallee*, 88 S. Ct. 1556, 1559 (1968) and *Sibron v. New York*, 88 S. Ct. 1889, 1899 (1968); *see also Minnesota v. Dickerson*, 113 S. Ct. 2130, 2135 n.2 (1993). Although this doctrine was originally developed to ensure the review of expired criminal sentences, it has been applied to the review of civil proceedings as well. *See, e.g., County of L.A. v. Davis*, 99 S. Ct. at 1384 (changes in the method used to fill vacancies in the Fire Department during the pendency of the case made the lawsuit moot because there was no reason to believe that petitioners would replace their present hiring procedures with invalid procedures, and because petitioners' five years of compliance with the new policies and hiring of over 50 percent of new recruits from minorities has "completely

cured any discriminatory effects of" the challenged, discontinued procedure); *INS v. Chadha*, 103 S. Ct. 2764, 2776-2777 (1983)(an alien's challenge to a deportation order was not mooted by the fact that the alien had married a citizen and become eligible for an immediate relative petition; alternative paths to citizenship were too speculative and would add significant time to the period before the alien would become eligible for citizenship, to establish mootness); *Umanzo v. Lambert,* 782 F.2d at 1301 (the deportation of an alien did not moot his application for judicial review of the order of deportation because of the collateral consequences that could flow from his deportation; any alien arrested and deported who sought admission within five years was ineligible for a visa, excluded from admission, and, if found in the United States, guilty of a felony); *Haitian Refugee Center v. Civiletti*, 504 F. Supp. 442, 466 n.46 (S.D. Fla. 1980)(revisions in regulations governing applications by Haitians for political asylum did not moot the challenge to those regulations as arbitrary because if the applications had been processed properly and had not been denied, some of the plaintiffs would not be facing deportation and possible return to a country where they contended they might be beaten or killed), citing *Connell v. Shoemaker*, 555 F.2d 483 (5th Cir. 1977)(the commanding officer of a military base found that plaintiffs had discriminated in leasing apartments and ordered military personnel not to lease from plaintiffs for a certain period; after that period expired, the case

was not moot because of the harm caused to their reputation through the imputation of bigotry implicit in the order).

Plaintiffs cite *Haitian Refugee Center v. Civiletti* in support of their position. In *Haitian Refugee Center*, plaintiffs alleged that defendants had adopted a systematic program designed to deport Haitians without regard to the merits of their individual asylum claims. 503 F. Supp. at 465. After the lawsuit was filed, defendants revised their regulations. The Florida district court refused to dismiss the case as moot, holding that the possibility of persecution of the deportees in their home country, although collateral to the denial of their asylum applications, was sufficient to prevent mootness. *Haitian Refugee Center v. Civiletti*, 504 F. Supp. at 466. The court explained that:

> [I]t would be incredible to contend that the plaintiffs are no longer suffering the effects of the defendants' alleged misconduct. As alleged by the plaintiffs, the District Director failed to consider fairly their applications for asylum which resulted in those applications being arbitrarily denied. Had those applications not been so denied, as alleged, some number of the plaintiffs would now be enjoying political asylum in the United States rather than facing deportation hearings and possible return to a nation where they contend they may be beaten or killed.

*Id.* at 466-67.

The cases cited above emphasize the heavy burden on the defendants to establish mootness and the obligation on the court to consider the practical

consequences of the discontinued policies. *Umanzo*, 782 F.2d at 1301; *Haitian Refugee Center*, 504 F. Supp. at 467. As noted above, when a suit is filed and the defendants amend or change the challenged statute, regulation, or government policy, the court must consider whether those superseding changes moot all, or some, of the plaintiffs' claims for relief. *See Naturist Soc. Inc. v. Fillyaw*, 958 F.2d at 1520.

This court finds that the exclusion of the Kogan and Toyber children from consideration for admission as derivative refugees is a collateral consequence of the defendants' challenged former policy. If defendants had not excluded Kogan's and Toyber's wives from eligibility to follow to join, they would have come to the United States. Under the Policy Memorandum, they are now eligible to follow to join. However, as a practical matter, they remain unable to follow to join their husbands. The inability of their infant children to enter the United States makes the mothers unable to enter the United States. As a collateral consequence of the prior policy, the spouses are still, as a practical matter, unable to follow to join. In addition, as plaintiffs point out, had defendants not excluded the spouses from following to join, the children would have been born in the United States. The refugee and his spouse would not now be facing the Hobson's choice between having the spouse abandon her child to come to this country, or remain with the child outside the United States and separate the family indefinitely.

*Haitian Refugee Center*, 504 F. Supp. at 466; *Umanzor v. Lambert,* 782 F.2d at 1301; *Fano v. O'Neill*, 806 F.2d 1262 (5th Cir. 1987).

Notwithstanding this finding, this court must dismiss plaintiffs' First Amended Complaint. In that complaint, plaintiffs requested a declaratory judgment invalidating defendants' "policy and practice of denying plaintiffs and class members the right to reunite under 8 U.S.C. § 1157(c)(2) when the defendants identify the refugee as a non-'principal' alien or non-'principal' applicant." In their motion for class certification, plaintiffs sought to certify a class of

> all refugees who have or will qualify for admission to the United States, their spouses and their children, all of whom have or will be denied the right to reunite under 8 U.S.C. §1151(c)(2) because the refugee is not considered by the defendants to be the principal applicant or the principal alien in his or her refugee case.

(Docket Entry No. 12, p. 1).

As explained in this court's prior Memorandum and Opinion, the new policy provides the relief requested by plaintiffs with respect to the "principal applicant" issue. (Docket Entry No. 70, p. 11). The new policy allows individuals who were determined to be derivative applicants under the old policy to refile their I-730 petitions, to be designated as the "principal applicant," and have their spouses and children follow to join under that designation. *Id.* The claim for an injunction against this policy and practice and the claims of these potential class

members are mooted by the new Policy Memorandum, promulgation of the proposed final rule, and the implementation of steps for widely disseminated notice of the policy change and of the opportunity to reapply under the new policy. *See, e.g., Phillips v. McLaughlin,* 854 F.2d 673, 677 (4th Cir. 1988)(a request for prospective and declaratory relief founded on a challenge to a regulation which no longer applies to plaintiffs does not present an actual case or controversy).

In the First Amended Complaint, plaintiffs also sought declaratory relief and an injunction against the defendants' "policy and practice of denying plaintiffs and class members the right to reunite in the United States under 8 U.S.C. § 1157(c)(2) solely because the relationship occurred after the refugee's interview *so long as the marriage, birth, or conception was prior to the refugee's entry into the United States. . . .* " (Docket Entry No. 11)(emphasis added). In their motion for class certification, plaintiffs sought to certify a class of:

> all refugees who have or will qualify for admission to the United States, their spouses, and their children, all of whom have or will be denied under 8 U.S.C. §1157(c)(2) because the marriage between the refugee and the spouse; *or the birth or conception of the refugee's child took place after the refugee's interview for refugee status but prior to refugee's entry to the United States.*

(Docket Entry No. 12, p. 2).

The Policy Memorandum and notification steps moot plaintiffs' declaratory and injunctive claims and the motion to certify this class of plaintiffs.

25

The Policy Memorandum makes the change plaintiffs sought. As long as the marriage occurs or the child is conceived when the refugee is admitted into the United States, the spouse or child may accompany or follow to join the refugee. (Docket Entry No. 91, Exh. B).

The relief plaintiffs now seek, the admission under an I-730 application of children conceived and born after their refugee parent was admitted into the United States, is beyond the claims plaintiffs asserted in their amended complaint. Although the refugee fathers and their spouses are potential members of the proposed class, their children clearly are not. Kogan's son and Toyber's daughter are not eligible to follow to join as derivative refugees. They were not born or conceived until after their fathers were admitted to the United States. The claims for relief based on the exclusion of Kogan's son and Toyber's daughter are outside the claims asserted in the latest amended complaint and outside the proposed class of plaintiffs.

Defendants argue that the children may be admissible under alternative statutory and regulatory provisions. However, plaintiffs respond, and defendants do not dispute, that there may be significant problems and additional delay attending the ability of the children to be admitted. As the Supreme Court found in *INS v. Chadha*, 103 S. Ct. at 2776-2777, such alternative paths to citizenship, or, in this case, admission, are too speculative to establish mootness. *Immigration &*

*Naturalization Service v. Cardoza-Fonseca*, 107 S. Ct. 1207, 1210 n.3 ("there is no way of knowing at this time whether respondent will be able to satisfy whatever burden is placed on her to demonstrate eligibility [under the alternative route]" and therefore her claim under the challenged statute is not moot).

The claims plaintiffs raise as collateral consequences are not included in their complaint. This court GRANTS the motion to dismiss plaintiffs' First Amended Complaint. This court also gives leave to plaintiffs to file a Second Amended Complaint, asserting the claims that remain as live controversies before this court, within thirty days of the date this order is entered.

## VI. Conclusion

With the exception of the collateral consequence of the children conceived after a refugee was admitted, in a marriage entered into between the refugee's INS interview and admission to the United States, the Policy Memorandum removes the features plaintiffs challenged in the INS's former approach. With the exception of the collateral consequence raised by plaintiffs, the Policy Memorandum, with the notification steps defendants have taken, moots the injunctive and declaratory claims asserted in the First Amended Complaint, and moots the request for class certification.

The claims plaintiffs raise as a collateral consequence are not included in their complaint. This court GRANTS the motion to dismiss plaintiffs' First

27

Amended Complaint and DENIES the motion for class certification. This court

also gives leave to plaintiffs to file a Second Amended Complaint, asserting the

claims that remain as live controversies before this court, within thirty days of the

date this order is entered.

SIGNED on _May 15_, 1997, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

28